**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**STATE EMPLOYEES FEDERAL CREDIT UNION,
also known as SEFCU,**

         **Appellant,**

 vs.             **1:15-cv-00418
                (MAD)**

**S.G.F. PROPERTIES, LLC; FARAGON PROPERTIES,
LLC,**

         **Appellees.**

_____

**APPEARANCES:**        **OF COUNSEL:**

**MELVIN, MELVIN LAW FIRM**    **LOUIS LEVINE, ESQ.**
217 South Salina Street
7th Floor
Syracuse, New York 13202-1686
Attorneys for Appellant

**NOLAN, HELLER LAW FIRM**    **FRANCIS J. BRENNAN, ESQ.**
39 North Pearl Street
3rd Floor
Albany, New York 12207
Attorneys for Appellees

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently pending before the Court is a consolidated appeal from two orders of the bankruptcy court and Appellant's letter motion requesting non-dismissal of its appeal on mootness grounds.

### II. BACKGROUND

On January 2, 2013, S.G.F. Properties, LLC and Faragon Properties, LLC ("Appellees") filed petitions for relief under Chapter 11 of the Bankruptcy Code. Dkt. No. 8-1 at ¶ 3. At that

time, Appellant held claims against Appellees totaling $1,496,219.47. *Id.* at ¶ 4. This debt was secured by mortgage liens upon thirteen properties owned by Appellees, one of which is located at 8-10 Locust Park, Albany, New York (the "Locust Park Parcel"). *Id.*

On April 18, 2013, Appellees submitted their first amended plan of reorganization. *See* Dkt. No. 2-2 at 1. On August 26, 2013, Appellant filed objections to this plan and, on December 15, 2014, Appellees submitted their second amended plan of reorganization. *See* Dkt. Nos. 2-2, 2-3. After numerous adjournments and a failed mediation session, on December 19, 2014, bankruptcy court judge Robert E. Littlefield referred the case to bankruptcy court judge Margaret Cangilos-Ruiz for a settlement conference to address Appellant's objections to the plan. *See* Dkt. No. 2-4. Judge Cangilos-Ruiz entered the terms of the settlement agreement on the record on January 13, 2015 (the "January 13 transcript") after conducting a day long mediation session. *See* Dkt. No. 2-5. The relevant portions of the January 13 transcript state that (1) Appellees would execute and deliver to Appellant deeds in lieu of foreclosure to all 13 parcels to hold in escrow pending a default by Appellees, (2) if, *inter alia*, Appellees reduced the principal amount of Appellant's claim to $950,000.00 or less before July 31, 2015, then a loan modification would occur, and (3) if Appellees made at least the first three regular monthly payments under the refinanced debt, "the properties [held in escrow] will not include [the Locust Park Parcel] that will have been released from the mortgages." *Id.* at 7-9. Appellant further stated on the record that, "[i]f the deed in lieu for [the Locust Park Parcel] is returned it will not be . . . the subject of a foreclosure." *Id.* at 17.

On January 23, 2015, Judge Cangilos-Ruiz so-ordered the January 13 transcript as a consensual resolution of Appellant's objections to Appellees' second amended plan. *Id.* at 1. In drafting an agreement to incorporate the terms of the stipulation into a document titled "Schedule

2

B" to be attached to Appellees' plan of reorganization, *see* 1:15-cv-546, Dkt. No. 4-1 at 37-50,[1] the parties disagreed as to the precise nature of Appellant's interest in the Locust Park Parcel, *see* Dkt. No. 6 at 10-11. Specifically,

> [Appellees] took the position that if the deed in lieu to the Locust Park Parcel were returned or destroyed then [Appellant] also would be required to release its mortgage lien from the Locust Park Parcel. [Appellant] took the position that it had merely agreed not to foreclose its mortgage on the Locust Park Parcel, and that a release thereof had not been required.

Dkt. No. 8-1 at ¶ 13. The disputed provision was the last sentence of paragraph "k" from said Schedule B. *See* Dkt. No. 6 at 11.

On March 23, 2015, Judge Cangilos-Ruiz conducted a conference with the parties to resolve this dispute. *See* Dkt. No. 2-1. The following day, Judge Cangilos-Ruiz issue an order ruling in Appellees' favor, finding that the terms of the January 13 transcript were clear "insofar as [Appellant] will have no remedy as to the [Locust Park Parcel] should [Appellees] meet the preconditions of settlement requiring [Appellant] to release its deed in lieu as to the property." Dkt. No. 2-7 at 3. Appellant filed a notice of appeal from this order on April 9, 2015. *See* Dkt. No. 1-1 at 26.

On April 20, 2015, Judge Littlefield issued an order confirming Appellees' second amended plan of reorganization, which included the Schedule B containing the revised paragraph "k" as ordered by Judge Cangilos-Ruiz. *See* 1:15-cv-546, Dkt. No. 4-1. Specifically, the relevant portion of the confirmed paragraph "k" states that, after satisfaction of the prerequisite conditions discussed above, "[Appellant] shall not resume or commence a Judicial Foreclosure of any of its

---

[1] This appeal was consolidated with Case No. 1:15-cv-546 on June 16, 2015. *See* Dkt. No. 4. Two documents are contained in the bankruptcy record on appeal of the previous case that are not in the record on appeal for the lead case. Those documents will be cited as 1:15-cv-546, Dkt. Nos. 4-1 & 3-2.

Liens encumbering [the Locust Park Parcel] and the mortgage encumbering said property shall be released." *Id.* at 46. Appellant appealed this order on April 29, 2015. *See* Dkt. No. 8-7. Appellant's appeals of the March 24, 2015 and April 20, 2015 orders were consolidated by this Court on June 16, 2015. *See* Dkt. No. 4.

On June 17, 2015, Appellant applied to Judge Littlefield for an order pursuant to Federal Rule of Bankruptcy Procedure 8007(a) staying enforcement of the April 20, 2015 order, pending appeal. *See* Dkt. No. 8-1 at ¶ 19. That motion requested limited relief to stay only the enforcement of the final portion of paragraph "k" of Schedule B. *Id.* at ¶ 19. Appellant's request for a stay pending appeal was denied by the bankruptcy court on June 23, 2015. *Id.* at ¶ 21; Dkt. No. 8-8. Appellant then applied to this Court for a similar stay, which was denied on November 25, 2015. *See* Dkt. No. 21.

Pursuant to the confirmed plan of reorganization, Appellees have satisfied the listed conditions requiring Appellant to release its mortgage on the Locust Park Parcel. *See* Dkt. No. 22. Appellant filed the release of its lien on that property on December 22, 2015. *Id.*

### III. DISCUSSION

**A.     Standard of Review**

In reviewing a bankruptcy court's decision, a district court applies the clearly erroneous standard to conclusions of fact and reviews conclusions of law *de novo*. *See In re Petition of Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 275 B.R. 699, 703 (S.D.N.Y. 2002) (citation omitted). Generally, "[t]he interpretation of unambiguous settlement-agreement terms is a question of law subject to *de novo* review." *In re Johns-Manville Corp.*, 759 F.3d 206, 214 (2d Cir. 2014) (citation omitted). However, a "bankruptcy court's interpretation of its own order 'warrants

4

customary appellate deference [because] [t]he bankruptcy court [is] in the best position to interpret its own orders.'" *In re Casse*, 198 F.3d 327, 333 (2d Cir. 1999) (quotation omitted).

Appellant argues that this deferential standard should not apply to Judge Cangilos-Ruiz's March 24 order confirming the January 13 transcript. *See* Dkt. No. 6 at 23. However, the cases cited by Appellant are inapplicable to this case as each involved the interpretation of a stipulation that was negotiated and drafted by the parties and merely presented to the court for approval. *See In re Westpoint Stevens, Inc.*, 600 F.3d 231, 251-52 (2d Cir. 2010); *United States v. Spallone*, 399 F.3d 415, 423-24 (2d Cir. 2005); *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 66 (2d Cir. 1998); *In re Enron Creditors Recovery Corp.*, 461 Fed. Appx. 11, 14 (2d Cir. 2012). Judge Cangilos-Ruiz's March 24 order was an interpretation of her own words recorded in the January 13 transcript regarding the release of the Locust Park Parcel. This transcript was entered on the record after conducting an all-day mediation to finalize the terms of the settlement agreement. *See* Dkt. No. 2-5 at 5-6. This interpretation falls squarely within the category of cases "[w]hen an issuing judge interprets [her] own orders," *Spallone*, 399 F.3d at 423, and, accordingly, "the court's interpretation of [her] order will not be disturbed 'absent a clear abuse of discretion[,]'" *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995) (quotation and other citations omitted).

## B.     Procedural Issues

### *1. Mootness*

The mootness doctrine as applied to bankruptcy court appeals involves both "equitable considerations as well as the constitutional requirement that there be a case or controversy." *In re Chateaugay Corp.*, 10 F.3d 944, 952 (2d Cir. 1993) [hereinafter *Chateaugay*]. An appeal is constitutionally moot when "an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party.'" *In re PC*

*Liquidation Corp.*, 383 B.R. 856, 862-63 (E.D.N.Y. 2008) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). The Second Circuit has adopted the following factors (the "*Chateugay* factors") in determining whether a bankruptcy appeal is equitably moot:

> (1) whether the court can fashion some effective relief; (2) whether the relief will adversely affect the debtor's reemergence pursuant to the plan; (3) whether the relief will unravel or otherwise make unmanageable the proceedings before the bankruptcy court; (4) whether the affected parties have adequate notice and opportunity to participate in the appeals; and (5) whether the party seeking relief diligently pursued administrative and judicial remedies to stay the order if doing so would prevent later prejudice to the parties if the order is reversed.

*In re Chateaugay Corp.*, 167 B.R. 776, 779 (S.D.N.Y. 1994) (citing *Chateaugay*, 10 F.3d at 952). "Only if all five *Chateuagay* factors are met, and if the appellant prevails on the merits of its legal claims, will relief be granted." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482 (2d Cir. 2012).

Appellees contend that "[i]nasmuch as the issue on appeal was whether [Appellant] was obligated under the Plan to release its mortgage, coupled with the facts that the conditions precedent to that release were satisfied and the release has now been filed, it is respectfully submitted that [Appellant's] appeal is now moot[.]" Dkt. No. 22. Weighing the *Chateaugay* factors in the context of this case, the Court finds that the instant appeal was not rendered moot by Appellant's release of its lien on the Locust Park Parcel.

If Appellant is successful on the merits of this appeal, the Court can grant effective relief by ordering a reinstatement of the mortgage lien on the Locust Park Parcel. If this relief is granted, Appellant would still not be able to foreclose upon the property as stated by its counsel in the January 13 transcript. *See* Dkt. No. 2-5 at 17. However, this would provide some relief to

Appellant because it would retain a lien upon the property so that it may recover in the event of Appellees' future sale of that property.[2]

While the reinstatement of the lien upon the Locust Park Parcel may temporarily prolong Appellees' duties under the confirmed plan of reorganization, such relief would not necessarily eliminate Appellees' ability to obtain additional financing. *See* Dkt. No. 24. Further, Appellees have three years to fulfill all of the obligations of the confirmed plan of reorganization, such that a temporary delay in obtaining financing would not doom the existence of Appellees' emergence from the bankruptcy proceedings. *See* Dkt. No. 24; *see also In re Charter Commc'ns, Inc.*, 691 F.3d at 482 ("[W]e cannot rely solely on the debtor's conclusory predictions or opinions that the requested relief would doom the reorganized company").

Granting the requested relief in this appeal would only change one small part of the reorganization agreement, i.e. the last sentence of paragraph "k" of Schedule B. Appellees entered the bankruptcy proceedings with Appellant holding mortgage liens on thirteen of its properties. The instant appeal only concerns the disposition of a single one of those properties. Further, the expediency of the Court's resolution of this appeal limits the possibility that numerous intervening rights would have to be adjudicated if the lien on the Locust Park Parcel were to be reinstated. *See generally In re Karta Corp.*, 342 B.R. 45, 52 (S.D.N.Y. 2006) (noting that the distribution of assets to numerous parties can cause "the transactions [to] proceed[] to the point where 'unscrambling the egg' would be inequitable if not impossible").

Both parties in this case have presented their arguments on the merits of the appeal before this Court. *See* Dkt. Nos. 6, 10, 18. Further, Appellant sought a stay, albeit unsuccessfully, of the

---

[2] At this time, Appellees have not sold or refinanced the Locust Park Parcel so there is no concern over the rights of intervening third parties. *See* Dkt. Nos. 22, 24.

7

bankruptcy court's orders from both the bankruptcy court and this Court. *See* Dkt. Nos. 8, 8-8, 13; *see also Chateaugay*, 10 F.3d at 954 (noting that a party's diligent pursuit to obtain a stay pending appeal satisfies this factor even if the stay is not ultimately granted). Accordingly, the release of the mortgage encumbering the Locust Park Parcel did not moot the current appeal and the Court will consider the merits of this appeal.

### *2. Scope of Appeal*

On January 23, 2015, the bankruptcy court so-ordered the January 13 transcript reciting the terms of the settlement agreement between the parties. *See* Dkt. No. 2-5. The time to appeal the language contained in that order passed fourteen days after entry of that judgment. *See* Fed. R. Bankr. P. 8002(a)(1). However, since the March 24, 2015 and April 20, 2015 orders were appropriately appealed from, the Court will review the issues raised in those orders, i.e. the interpretation of the January 23, 2015 order. While the Court cannot modify any of the language contained in the January 23 order, the appeal of that order was not a prerequisite to bringing the current appeal. *See* Dkt. No. 10 at 14-15; Dkt. No. 6 at 24-25.

Appellees contends that Appellant did not properly object to the confirmation of the plan of reorganization on April 20, 2015. *See* Dkt. No. 10 at 18. However, the current appeal is not seeking to set aside the entire confirmed plan of reorganization, but only to the extent that it incorporates the revised paragraph "k" as ordered by Judge Cangilos-Ruiz's March 24, 2015 order. *See* Dkt. No. 2. Accordingly, as Appellant timely appealed that order, the Court may consider the limited objection to the confirmation of the plan based upon the terms set forth by Judge Cangilos-Ruiz.

**C.** **Merits of the Appeal**

When interpreting a written agreement, the "first step . . . is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Virgilio v. City of New York*, 407 F.3d 105, 112 (2d Cir. 2005) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  The terms of an agreement are ambiguous only if "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (quotation omitted).  "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.  The court is not required to find the language ambiguous where the interpretation urged by one party would 'strain[] the contract language beyond its reasonable and ordinary meaning.'" *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (quotation omitted).  If a court concludes that the terms of a contract are unambiguous, it must interpret the meaning of the contract solely from the words contained therein and cannot "consider any extrinsic evidence as to the parties' intentions[.]" *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (citation omitted).

Appellant contends that the bankruptcy court's statement on page 8 of the January 13 transcript that the lien encumbering the Locust Park Parcel would be released, in contrast to the statement on page 16 that Appellant would not foreclose upon that property, creates an ambiguity within the settlement transcript. *See* Dkt. No. 6 at 13-16.  Judge Cangilos-Ruiz considered this argument and concluded that "there is not an appropriate interpretation [of the January 13 transcript] that would support what is being argued here."  Dkt. No. 2-1 at 10.  For the following reasons, the Court finds that Judge Cangilos-Ruiz did not abuse her discretion in finding that,

9

when viewed as a whole, no reasonably intelligent person could conclude that an ambiguity existed in the January 13 transcript.

Appellant incorrectly asserts that the bankruptcy court's "statement at the bottom of page 8 of the January 13, 2015 transcript is the only place in the transcript wherein there is mentioned a release of the mortgage lien on [the Locust Park Parcel]." Dkt. No. 6 at 15. Rather, the transcript specifically references the release of that mortgage on two other occasions. On page 7, the court states that "pursuant to the modification, and at the end of making three payments it is agreed that one of the deeds in lieu for the property that is identified as 8-10 Locust will be released back to the debtor, assuming that those three payments are made." Dkt. No. 2-5 at 8. On page 15 and 16 of the settlement transcript, the following conversation again references the release of the Locust Park Parcel:

> Mr. Levine: . . . if there has occurred an event of default, [Appellant] can determine to resume the foreclosure action to foreclose its mortgage lien on the properties provided that if there is a foreclosure no deficiency judgment will be sought against any of the guarantors or the (indiscernible). . . . And 8-10 Locust will be excluded from that. If it occurs after the deed in lieu has been. . . .
> The Court: Been released.

*Id.* at 16-17. Thus, Judge Cangilos-Ruiz's interpretation that the lien encumbering the Locust Park Parcel should be released is consistent with the three times that such release was mentioned on the record setting forth the terms of the settlement agreement. Judge Cangilos-Ruiz was again going to reiterate the release of the Locust Park Parcel when Appellant's counsel was discussing the issue on page 16 of the transcript, but she was cut off before she could state that condition for a fourth time. *See* Dkt. No. 2-1 at 8. In the March 23, 2015 hearing, Judge Cangilos-Ruiz

addressed this issue and stated that she did not feel the need to restate the release condition after being interrupted because she had already made that condition clear earlier in the record. *Id.*

Appellant contends that "[t]he very word 'foreclosure' carrie[s] with it the inescapable and necessary connotation that a mortgage lien would still encumber the [Locust Park Parcel] after the return of the deed in lieu." Dkt. No. 6 at 16. Conversely, the statement that the Locust Park Parcel would not be the subject of a foreclosure action is entirely consistent with the lien on that property being released. The terms of the settlement agreement dictate that, in the event of a default, Appellant has the option of enforcing its liens upon Appellees' properties in either of two manners; it can file the deeds in lieu held in escrow and take back Appellees' properties, or it can proceed with an *in rem* foreclosure action. *See* 1:15-cv-546, Dkt. No. 4-1 at 47. Appellant concedes that the deed in lieu for the Locust Park Parcel was to be returned to Appellees after the first three payments under the refinanced agreement had been made. *See* Dkt. No. 2-5 at 17. Thus, after the deed in lieu is returned, the only remaining option to recover from the Locust Park Parcel would be to commence a foreclosure proceeding. As Appellant stated that it would not foreclose upon that property, there is no remaining remedy available to recover from the Locust Park Parcel. As such, the agreement not to foreclose on the Locust Park Parcel is consistent with a release of the lien on that property. Moreover, if Appellant released its lien on the Locust Park Parcel, it would not longer have any interest in the property and would, thus, not have the right to foreclose upon it. Accordingly, without the right to foreclose, it is consistent that Appellant stated that they would not undertake such action on the Locust Park Parcel.

In contrast to the logical reading of the settlement agreement that the mortgage lien on the Locust Park Parcel would be released, Appellant's proposed interpretation is inconsistent with the terms of the transcript as a whole. As Judge Cangilos-Ruiz stated in her March 24, 2015 order,

11

"[Appellant's] argument, however, completely ignores the totality of the agreement, which, when read in its entirety, is consistent with the court's conclusion." Dkt. No. 2-7 at 2; *see also Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (citation omitted) ("Contracts must be read as a whole, and if possible, courts must interpret them to effect the general purpose of the contract"). In addition to the repeated reference to the release of the Locust Park Parcel, the January 13 transcript clearly states that "it will be the 12 remaining properties that [Appellant] can pursue as part of its remedy" in the event of a default. *See* Dkt. No. 2-5 at 10. Thus, after the stated preconditions to refinancing had occurred, the Locust Park Parcel was no longer considered to be a part of the collection of properties that Appellant could turn to for recovery in the event of a default.

The extent to which Appellant endeavors to stretch the ordinary meaning of the terms in the January 13 transcript further discredits its argument that a reasonable reading of the agreement could be subject to multiple interpretations. Appellant contends that paragraph "k" of Schedule B should read "[Appellant] shall not resume or commence a Judicial Foreclosure of any of its Liens encumbering 8-10 Locust Park *for as long as it is owned by one of the Debtors*." Dkt. No. 6 at 13 (emphasis added). At no point in the January 13 transcript is it mentioned or implied that Appellant's rights or interests in any of the properties are contingent upon the properties being owned by the debtors. This position taken by Appellant does not merely point out an alleged ambiguity in the underlying contract, it is asking this Court to re-write the settlement agreement to include terms that were not contemplated in the original agreement. Appellant argues that its proposed reading was "implied by the transcript of January 13, 2015." Dkt. No. 18 at 12. However, "courts 'do not ordinarily read implied limitations into unambiguously worded

contractual provisions . . . .'" *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 471 (S.D.N.Y. 2013) (quotation omitted).

When asked if there were any clarifications to the January 13 transcript that needed to be made, Appellant's counsel did not state that he was refuting any of the previous conditions mentioned in the transcript. Rather, he started with, "without tending to be redundant I'd just like to bear (sic) it again." Dkt. No. 2-5 at 16; Dkt. No. 6 at 9. A plain reading of this language indicates that Appellant was reiterating what the bankruptcy court had already stated in the record. *See Redundancy*, Black's Law Dictionary (10th ed. 2014) ("[A] word or phrase that is superfluous because its sense is already contained in the sentence or passage"). Thus, Appellant's argument that its later "clarification" carried a different meaning than the terms listed earlier in the transcript is undermined by its assertion that its further comments may be redundant to what was already discussed. *See* Dkt. No. 6 at 16. Moreover, as Judge Cangilos-Ruiz pointed out, "if [Appellant's counsel] wanted to clarify something, [he] needed to say, Judge, I take exception to what is stated, that [the Locust Park Parcel is] being released from the mortgages." Dkt. No. 2-1 at 8.

Appellant states that there "is no place in the transcript of January 13, 2015 wherein Appellant's counsel agreed that Appellant would issue a release . . . ." Dkt. No. 18 at 12. While this is an accurate statement, it fails to establish that the release of the Locust Park Parcel was not a part of the settlement agreement recorded by Judge Cangilos-Ruiz. A majority of the terms that Judge Cangilos-Ruiz transcribed in the settlement agreement were not specifically addressed and agreed to on the record by both parties' counsel. To follow Appellant's argument to its logical conclusion would require an express acknowledgment by each party to each term that was included in the settlement agreement. Not only was such a requirement not discussed by the

13

parties, but Judge Cangilos-Ruiz clearly stated that the purpose of the January 13 transcript was to announce the terms of the settlement agreement reached in the mediation session, and not so that she could open up the record for a continuous discussion of the terms stated therein. *See* Dkt. No. 2-5 at 6-9.

In discussing other requirements of Appellant under the proposed plan of reorganization, Judge Cangilos-Ruiz noted in the January 13 transcript that "[Appellant] has agreed to release the mortgage – the second mortgage against the [debtors'] residence." *Id.* at 14. This requirement was incorporated into the approved Schedule B, stating that "[Appellant] will deliver to Debtors a release of its mortgage lien encumbering the personal residence of the Guarantors . . . ." 1:15-cv-546, Dkt. No. 4-1 at 43. Appellant raised no concerns over the use of the term "release" in the context of the mortgage encumbering the debtors' personal residence. Likewise, Appellant did not object to the same "release" language being incorporated into the final Schedule B for said residential property. *See Johnson & Johnson v. Guidant Corp.*, No. 06-cv-7685, 2014 WL 3728598, *15 (S.D.N.Y. July 22, 2014) (quotation omitted) ("[T]he general rule of contract construction presum[es] that words have the same meaning throughout the contract"). Rather, Appellant posits that the "release" language was only ambiguous as applied to the Locust Park Parcel and, when used in the context of the debtors' personal residence, it was not an ambiguous term. Indeed, Appellant concedes that, "[w]ith the exception of the last line of page 8 of the [January 13] transcript, Judge Cangilos-Ruiz did state correctly therein the structure of the parties' agreement." Dkt. No. 6 at 8.

For the foregoing reasons, the Court finds that Judge Cangilos-Ruiz's March 24, 2015 order that no ambiguity existed in the settlement agreement was not an abuse of discretion. As the terms of the settlement agreement are not ambiguous, the Court need not delve into the

14

parties' remaining arguments concerning cannons of contractual construction to discern the intent of the parties in making the agreement. *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (citations omitted) (noting that the court should not consider extrinsic evidence to interpret an unambiguous contract).

While Appellant asserts seven issues on appeal, *see* Dkt. No. 2 at 2-4, the root of each issue is the interpretation of the January 13 transcript regarding the release of the Locust Park Parcel. Since the Court agrees with Judge Cangilos-Ruiz's interpretation of the January 13 transcript, the approved provision in paragraph "k" was properly incorporated into the Schedule B as approved on April 20, 2015. Accordingly, the bankruptcy court's March 24, 2015 and April 20, 2015 orders are affirmed in their entirety.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Appellant's letter motion requesting non dismissal on mootness grounds (Dkt. No. 23) is **GRANTED**; and the Court further

**ORDERS** that the March 24, 2015 and April 20, 2015 orders of the bankruptcy court are **AFFIRMED**; and the Court further

**ORDERS** that Appellant's appeal is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: February 3, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge